Charles John **ROBERDS** and Geraldine Louise Roberds, Respondents,

v.

George **SWEITZER** and Estate of Edward J. Murphy, deceased, Jean B. Murphy, Personal Representative, Appellants.

No. 69027.

Supreme Court of Missouri,
En Banc.

July 14, 1987.

---

illegal contract. The court of appeals reversed and remanded for determination of the reasonable value of the attorneys services. The case was certified to this Court by a dissenting judge. Reversed and remanded.

On December 21, 1982, the circuit court entered a decree which dissolved the marriage of Geraldine and Charles Roberds and approved a property agreement upon a finding that it was not unconscionable.

On January 20, 1983, Geraldine contacted attorney Sweitzer and told him she believed the property settlement was unfair. Sweitzer informed her that the time limitation for an appeal or a motion to set aside the judgment was expiring that day. He offered to investigate the matter if she would return with whatever papers she had regarding the dissolution. A few days later she returned with a copy of the settlement agreement. By January 28th, Sweitzer had met with Ralph Pratt, Charles' lawyer, from whom Sweitzer obtained the dissolution petition and decree.

Through March 4th, Sweitzer informed himself of the property settlement's conditions. He had several conversations with Geraldine and another with Pratt. On April 1st, Pratt sent Sweitzer papers which Pratt wanted Geraldine to sign, pursuant to the property settlement agreement. Sweitzer had asked Geraldine to get additional information on several items in the property settlement which had no listed valuation. Because that information remained unavailable and because Geraldine had indicated that she would sign nothing in the present circumstances, Sweitzer took no immediate action on these papers. On June 21, 1983, Sweitzer traveled to Independence and recorded the associate circuit court's tape of the dissolution proceedings.

On July 13, 1983, Geraldine was served with contempt papers and was ordered to show cause why she had not signed the papers necessary to effectuate the property settlement. Approximately August 1st, Sweitzer decided that Geraldine had a meritorious position. He traveled to Butler, Missouri, where he associated Attorney Edward Murphy to assist him in representing Geraldine. In early August, after a meet-

W. Raleigh Gough, Independence, George T. Sweitzer, Jr., Harrisonville, Edward J. Murphy, Butler, for appellants.

Jeri Leigh Caskey, Alton, Harold L. Caskey, Butler, for respondents.

BILLINGS, Chief Justice.

Attorney George Sweitzer and the Estate of Edward Murphy sought attorney fees for legal services rendered in attacking a property settlement arising out of the dissolution of the marriage of Geraldine and Charles Roberds. The trial court invalidated Sweitzer's and Murphy's attorney's lien, ruling their contingency fee contract was void as against public policy; further, any claim in quantum meruit was tainted by the

ing of Murphy, Sweitzer and Geraldine, they agreed that the fee would be a contingent one for 50% of what Geraldine received over and above the property she was entitled to in the original property agreement.

Sweitzer filed a motion to set aside the circuit court's decree on August 17, 1983. Following a hearing the court on October 12, 1983, set aside the original property settlement as unconscionable. On October 24th, the court amended its order to note that the motion was sustained because of Charles Roberds' failure to provide the court with all requested information regarding marital property assets and liabilities. While the order provided for a future hearing to properly divide the property, the dissolution of the marriage as irretrievably broken was not affected. Charles filed a notice of appeal.

On December 23, 1983, Geraldine wrote to Sweitzer and Murphy, discharging them as her attorneys. She said she was discontinuing her legal action against Charles and requested a bill for their expenses above a previous cash advance to Sweitzer of $1,000. She retained other counsel and reached a compromise settlement.

On April 12, 1984, Sweitzer and Murphy caused notice to be issued to Charles and his counsel, Pratt, of an attorneys' lien against any funds held by Charles which belonged to or would be distributed to Geraldine. The lien set out a claim for the reasonable value of professional services inclusive of out-of-pocket expenses up to the termination of their employment in the matter in the amount of $10,000.

On December 3, 1984, pursuant to a stipulation of the parties, the court of appeals remanded the case to the circuit court for approval of the compromise settlement and for a determination of the validity and extent of the claim for attorneys' lien. The trial court approved the compromise settlement on May 2, 1985. The trial court excluded evidence of the compromise settlement in the lien proceeding. A comparison of the original and second agreements shows that Geraldine received substantially more property in the second agreement and obtained exclusive use of the marital home.

The trial court ruled the attorneys' lien was without merit, and without force and effect; that the attorneys had failed to establish a separate claim sounding in quantum meruit because such a claim was tainted by the void contingency fee contract. The court of appeals held the lien was supported by the attorneys' claim in quantum meruit for the reasonable value of their services up to their discharge.

The respondents and the certifying judge rely on *Shanks v. Kilgore*, 589 S.W.2d 318 (Mo.App.1979). *Shanks* stands for the proposition that contingency fee contracts in dissolution proceedings are void as against public policy. *Id.* at 321. *Accord Guenard v. Burke*, 387 Mass. 802, 443 N.E.2d 892, 895 (1982). *Morfeld v. Andrews*, 579 P.2d 426, 429 (Wyo.1978). Public policy favors reconciliations and the effect of such contracts is to give an attorney an interest in avoiding reconciliation. Similarly, the financial interest of attorneys in contingency arrangements may occasionally thwart another public policy purpose. Settlement of property rights is integral to the dissolution proceedings. *Shanks*, 589 S.W.2d at 321. The statutory scheme intends that the approving court be fully informed of the marital property to be distributed. *See Guenard*, 443 N.E.2d at 895. The existence of contingency agreements could provide an incentive to conceal property.

Here, the marriage had already been dissolved. Reconciliation was not a realistic possibility. Charles Roberds remarried on September 7, 1983. Moreover, the set-aside of the original property agreement evidences that the court benefited from additional information in the later property settlement.

Sweitzer's and Murphy's prayer for relief clearly sounds in quantum meruit. The April 1984 Notice of Attorney's Lien asks for "the reasonable value of the aforenamed attorneys' services to [Geraldine] inclusive of out-of-pocket expenses incurred and to the point of termination of professional responsibility to [her]...."

The unique aspects of the attorney-client relationship dictate that the

client has great freedom to change legal representation; "the modern rule allow[s] a client to discharge his attorney, with or without cause, at any time." *Plaza Shoe Store, Inc. v. Hermel, Inc.*, 636 S.W.2d 53, 57–58 (Mo. banc 1982). However, the client's expansive right to discharge an attorney is subject to the attorney's right to be paid for the services rendered up to the point of discharge. In *Plaza Shoe*, this Court limited "the discharged attorney's recovery in discharge cases to the reasonable value of services rendered" up to the time of discharge. 636 S.W.2d at 57.

Geraldine initially contacted Sweitzer on January 20, 1983. The attorney acted on her behalf and his services were accepted by her through six months before the contingency fee contract was signed. She continued to accept his services through his handling of the contempt motion raised against her and through his efforts to set aside the property settlement.

 "A promise to pay the reasonable value of an attorney's services is implied where there is no express contract, if the services are accepted by the client or rendered at his request, and recovery may be had in quantum meruit, to the extent of the reasonable value of the lawyer's services to his client." *Craig v. Jo B. Gardner, Inc.*, 586 S.W.2d 316, 325 (Mo. banc 1979) (citations omitted). When nothing is said about fees, "the universal rule is that courts will find an agreement to pay the attorney the reasonable value of the servies rendered." *Morfeld*, 579 P.2d at 429 (quoting 7 Am. Jur.2d Attorneys at Law § 204, at 165–66). After discharge, the attorney may recover in quantum meruit for his services rendered. *Plaza Shoe*, 636 S.W.2d at 60.

 Prior to the allegedly void contingent fee contract, an implied contract existed between Geraldine and Sweitzer. The contingent contract purported to supersede this implied agreement. She continued to accept the services of the attorneys until she discharged them. That the contingent fee contract is allegedly void as against public policy is irrelevant to the recovery sought. As expressed in the court of appeals opinion, that contract went "out the window" when the attorneys were fired.[1]

Section 484.130, RSMo 1986, provides:

The compensation of an attorney ... is governed by agreement, express or implied, which is not restrained by law. From the commencement of an action ..., the attorney who appears for a party has a lien upon his client's cause of action ..., which attaches to a verdict, report, decision or judgment in his client's favor, and the proceeds thereof in whosesoever hands they may come; and cannot be affected by any settlement between the parties *before or after judgment.* (emphasis added).

It has been recognized in this state that the attorney's lien attaches to an award arising out of a divorce proceeding. *Schechter v. Fitzsimmons Industries, Inc.*, 627 S.W.2d 89, 90 (Mo.App.1981) (citing § 484.130). There is no reason that such a lien cannot attach here.

 The trial court sits as an expert in consideration of attorney fees, *Arnett v. Johnson*, 689 S.W.2d 836, 838 (Mo.App. 1985), and can determine the amount of reasonable attorney fees due appellants after consideration of all relevant factors.

The judgment is reversed and the case is remanded for determination of the reasonable value of the services rendered.

All concur.

---

1. Several jurisdictions have permitted attorneys to recover in quantum meruit even when the condemned contingent fee contract existed at the outset of the employment relationship and clearly included the initial dissolution. *Guenard*, 443 N.E.2d at 894 (permitting a fee based on the fair value of services despite a specific violation of a court rule forbidding the divorce contingency); *McDearmon v. Gordon & Gremil-* *lion*, 247 Ark. 318, 332, 445 S.W.2d 488, 496 (1969) (reversing on a contingent dissolution contract and remanding for an evidentiary hearing on reasonable fees); *see also* Annotation, *Attorney's Recovery in Quantum Meruit for Legal Services Rendered Under a Contract Which is Illegal or Void as Against Public Policy*, 100 A.L. R.2d 1378, 1390 (1965; 1983 and 1987 Supps.).